UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| 3C, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Case No. 1:24-cv-00696-TWP-MG |
| ) | |
| SS DISTRO USA, LLC d/b/a SS Vape and Smoke ) | |
| USA, ) | |
| SS DISTRO LLC, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS, OR
ALTERNATIVELY TRANSFER THE ACTION TO TEXAS**

This matter is before the Court on Defendant SS Distro USA, LLC, and SS Distro LLC's, (collectively "SS Distro"') Motion to Dismiss for Lack of Personal Jurisdiction (Filing No. 17). Plaintiff 3C, LLC ("3C") initiated this action in state court alleging claims for breach of contract, fraud, violations of the Indiana Crime Victim's Relief Act and injunctive relief, and on April 19, 2024, SS Distro removed this case pursuant to 28 U.S.C. § 1446 (Filing No. 1). SS Distro asks this Court to dismiss 3C's Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure ("FRCP") 12(b)(2) or alternatively, to transfer the case pursuant to 28 U.S.C. § 1404. . For the reasons explained below, SS Distro's alternative request to transfer is **granted** and the motion to dismiss is **denied as moot**.

**I.      BACKGROUND**

The following facts are not objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of 3C as the non-moving party. *See Bielanski v. Cnty. Of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

3C is an Indiana limited liability company with its principal place of business in Indiana ([Filing No. 1-2 at 2](Filing No. 1-2 at 2)). 3C manufactures and sells various cannabis products both directly to consumers and through its "Wholesaler Program." *Id*. at 3. Purchases through the Wholesaler Program are subject to 3C's Refund Policy and Terms and Conditions which provide that all purchases are subject to Indiana law. *Id*. at 21. SS Distro is a Texas limited liability company that runs a distribution and wholesale center for convenience stores, smoke shops, and vape stores. *Id*. at 2.

On April 7, 2022, SS Distro became a member of 3C's Wholesaler Program. Participants in the wholesaler program receive a substantial discount on prices, access to "wholesaler exclusive" products, and are permitted to resell 3C's products, and those purchases are subject to the Refund Policy. *Id*. at 3. SS Distro placed its first purchase order on April 22, 2022, followed by a second order on July 11, 2022. *Id*. at 4. Several months later from October 19, 2022, to November 21, 2022, SS Distro placed seven purchase orders totaling over $200,000.00. *Id* at 4-5. SS Distro made these purchases in Texas, from 3C through 3C's representative who visited SS Distro's Texas office. (Filing No. 18-1 at 3). All orders were shipped from 3C's warehouse in Fishers, Indiana. (Filing No. 1-2 at 32).

In January 2023, SS Distro contacted 3C demanding a refund on the grounds that it could not sell the products. *Id*. at 5. However, SS Distro did not return any of the products at this time. *Id*. Instead, on April 13, 2023, SS Distro contacted its American Express credit card holder, disputed the 3C charges and initiated 42 chargebacks.[1] Thereafter, without an explanation, on June 20, 2023, 3C received a shipment from SS Distro containing products that SS Distro had purchased from 3C. All the returned products were outside of the time allowed in the Refund Policy, and

---

[1] A chargeback is when the credit card holder disputes the charge to their credit card company.

many were expired. *Id*. at 7. As a result of these allegedly fraudulent activities, 3C lost thousands of dollars in chargebacks and inventory that it is no longer able to sell, as well as money to pay the administrative costs and penalties associated with responding to SS Distro's fraudulent chargeback requests. Additionally, 3C suffered reputational harm with American Express and its payment processors. On March 15, 2024, 3C initiated this action in state court against SS Distro for breach of contract, fraud, violations of the Indiana Crime Victim's Relief Act and injunctive relief. On April 19, 2024, SS Distro removed this case from the Marion Superior Court pursuant to 28 U.S.C. § 1446 ([Filing No. 1](Filing No. 1)).

## II. LEGAL STANDARDS

### A. Motion to Dismiss under Rule 12(b)(2)

Federal Rule of Civil Procedure Rule 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. When deciding a Rule 12(b)(2) motion, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff if they weigh on personal jurisdiction. *Int'l Med. Grp., Inc. v. Am. Arb. Ass'n*, 149 F. Supp. 2d 615, 623 (S.D. Ind. 2001). If the complaint, however, consists of conclusory allegations unsupported by factual allegations, the complaint fails the liberal standard of Rule 12(b). *Id*.

The complaint does not need to include factual allegations concerning personal jurisdiction, but if the defendant moves to dismiss under Rule 12(b)(2), the plaintiff "bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 82 (7th Cir. 2003). The extent of a plaintiff's burden is dependent upon the method by which the court determines the issue of personal jurisdiction. *Id.* "When the . . . court holds an evidentiary hearing to determine [personal] jurisdiction, the plaintiff must establish [personal] jurisdiction by a preponderance of the evidence." *Id.* But where, as here, the court

3

determines personal jurisdiction based only on reference to submissions of written materials, the plaintiff simply needs to make a prima facie case of personal jurisdiction. *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).

In determining whether the plaintiff has met the *prima facie* standard, the plaintiff is entitled to a favorable resolution of all disputed relevant facts. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010). If the defendant has submitted evidence in opposition to the implementation of jurisdiction, however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 782-83. This evidence submitted by the defendant may include affidavits, unless the affidavits merely contain conclusory assertions that the court lacks personal jurisdiction over the defendant. *Id.* at 783 (quoting *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

### B. Motion to Dismiss for Improper Venue under Rule 12(b)(3)

The procedure for resolving a Rule 12(b)(3) motion is the same procedure used to test personal jurisdiction, accepting any factual findings as true unless contradicted by the defendant's affidavits. *See, Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2nd Cir. 2005); *Nagel v. ADM Inv'r Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). The plaintiff bears the burden of establishing that venue is proper. *Carroll v. CMH Homes, Inc.*, 4:12-CV-23-SEB-WGH, 2013 WL 960408, *2 (S.D. Ind. Mar. 12, 2013). Further, the court resolves any factual conflicts in the plaintiffs' favor. *Carroll*, 2013 WL 960408 at *2. Finally, the court is not obligated to limit its consideration to the pleadings when deciding a motion to dismiss under Rule 12(b)(3). *Faulkenberg*, 637 F.3d at 809-10.

### C. Transfer of Venue

A transfer is the proper mechanism for addressing lack of proper venue under the common law doctrine of *forum nonconveniens*. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). A party may seek change of venue pursuant to 28 U.S.C. § 1404(a), which states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

"[S]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to a case-by-case consideration of convenience and fairness. … By the same token, [appellate courts] grant a substantial degree of deference to the district court in deciding whether transfer is appropriate." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977–78 (7th Cir. 2010) (internal citations and punctuation omitted). The Seventh Circuit has further explained,

> The statutory language guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice. The statute permits a flexible and individualized analysis and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations.

*Id.* at 978 (internal citation and quotation marks omitted).

Concerning the "convenience" factor, courts consider the availability of and access to witnesses, each party's access to and distance from resources in each forum, the location of material events, and the relative ease of access to sources of proof. *Id.* "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Id.*

Concerning the "interest of justice" factor, courts consider the efficient administration of the court system, including docket congestion and likely speed to trial in each forum, each court's familiarity with the relevant law, the desirability of resolving controversies in each location, and

the relationship of each community to the controversy. *Id.* "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.*

### III.   DISCUSSION

SS Distro seeks dismissal of this action pursuant to Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(3) for improper venue. In the alternative, SS Distro argues this case should be transferred to the Northern District of Texas, which is the place of Defendants' principal offices, the place where the cannabis products were allegedly ordered and delivered, and where most relevant records and potential witnesses reside. The Court will discuss personal jurisdiction before turning to whether dismissal or transfer is appropriate.

**A.   Personal Jurisdiction**

SS Distro asks the Court to dismiss this suit under Rule 12(b)(2) for lack of personal jurisdiction ([Filing No. 18 at 1](#)). SS Distro asserts that it does not have sufficient minimum contacts with Indiana because it does not conduct any business in Indiana, the products were all delivered in Texas, and all transactions alleged in the complaint occurred in Texas. *Id.*

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue,* 338 F.3d at 779. To determine whether this Court has jurisdiction over SS Distro, the Court first considers whether Indiana's long-arm statute and the federal constitution permit the exercise of jurisdiction. *Id.*; *see also Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). "Indiana Trial Rule 4.4(A)—Indiana's 'long-arm' rule for exercising personal jurisdiction over out-of-state defendants—permits exercising personal jurisdiction in any manner that is consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Oswald v.*

6

*Shehadeh*, 108 N.E.3d 911, 916-917 (Ind. Ct. App. 2018). Whether personal jurisdiction is proper under Indiana's long-arm statute and the Due Process Clause therefore "collapses into a single search for what the outer limits of due process permit." *Hotmix & Bituminous Equip. Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824, 827 (Ind. Ct. App. 1999).

Personal jurisdiction over an out-of-state defendant permitted by the Due Process Clause arises in two forms: general personal jurisdiction, which allows a court "to hear any and all claims against [the out-of-state defendant] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)), and specific jurisdiction which is "confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* Only specific jurisdiction is contested in this case as neither party asserts that the Court has general jurisdiction over SS Distro.

To establish specific personal jurisdiction in the forum state, the defendant must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (quoting *Int'l Shoe*, 326 U.S. at 316). "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Spokane Kart Racing Ass'n v. Am. Kart Track Promoters Ass'n, Inc.*, 206 N.E.3d 462, 467 (Ind. Ct. App.), *trans. Denied*, 212 N.E.3d 1230 (Ind. 2023) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The United States Supreme Court instructed lower courts' analysis of the minimum contacts test in *Burger King*, 471 U.S. at 472. In that case, the Supreme Court analyzed whether a Florida court could exercise specific personal jurisdiction over a Michigan-based defendant for

7

claims alleging failure to make payments to a Florida corporation, Burger King, under a franchise agreement. *Id*. at 464. The Supreme Court held that "critical to due process analysis" is "foreseeability," specifically whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id*. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Further, the Supreme Court held that an "individual's contract with an out-of-state party alone can[not] automatically establish sufficient minimum contacts in the other party's home forum," *id*. at 478, but noted that a lack of physical contacts with a state cannot defeat personal jurisdiction "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State," *id*. at 476. The Supreme Court also instructed lower courts to evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum." *Id*. at 479. Contacts that are "'random,' 'fortuitous,' or 'attenuated'" are insufficient to establish a forum state's jurisdiction over a defendant. *Id*. at 475 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299).

Turning to the facts in *Burger King*, the Supreme Court found that the Florida court had specific personal jurisdiction over the Michigan defendant, emphasizing the following factors: (1) the defendant "'reach[ed] out beyond' Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization," *id*. at 479-80 (quoting *Travelers Health Ass'n v. Com. Of Va. Ex rel. State Corp. Comm'n*, 339 U.S. 643, 647 (1950)); (2) the twenty-year contract "envisioned continuing and wide-reaching contacts with Burger King in Florida," *id*. at 480; and (3) "the parties' actual course of dealing repeatedly confirmed that decisionmaking authority was vested in

[Burger King's] Miami headquarters." *Id.* The Supreme Court also noted that throughout various disputes that arose in their course of dealing, the parties "carried on a continuous course of direct communications by mail and by telephone," and that "[t]he contract documents themselves emphasize that Burger King's operations are conducted and supervised from the Miami headquarters, that all relevant notices and payments must be sent there, and that the agreements were made in and enforced from Miami." *Id.* at 480-481.

The Indiana Court of Appeals recently found that an Indiana court could exercise specific personal jurisdiction over out-of-state defendants in *Spokane Kart Racing*, 206 N.E.3d at 464. In *Spokane Kart Racing*, a number of Oregon- and Washington-based defendants contracted with the plaintiff, the American Kart Track Promoters Association, Inc. ("AKTPA"), an Indiana corporation, for membership in AKTPA and for insurance issued by AKTPA. *Id.* The court noted that the case "involve[d] more than just a contract for insurance," and held that personal jurisdiction was appropriate despite a lack of the defendants' physical presence in Indiana because the defendants sought out a business relationship with AKTPA, included automatic renewal in their contract terms, received various forms and items from AKTPA in Indiana, sent payments to AKTPA in Indiana, corresponded with AKTPA nearly one hundred times, and returned reports to Indiana for AKTPA. *Id.* at 469.

On the other hand, Indiana state and federal courts have found personal jurisdiction lacking where the contacts with Indiana are less extensive than those in *Burger King* or *Spokane Kart Racing*. In *Hotmix & Bituminous Equip. Inc. v. Hardrock Equip. Corp.*, the Indiana Court of Appeals held that the contacts between Indiana and defendant Hardrock, a New York corporation, were insufficient to support personal jurisdiction. 719 N.E.2d at 830. The court found that the out-of-state corporation was "not generally engaged in business in Indiana, its agents did not come to

9

Indiana to offer or negotiate an agreement, and its contacts with Indiana consisted solely of interstate mailings and telephone calls." *Id*. at 828. The court found it could not extend personal jurisdiction to the defendant "[e]ven assuming that Hardrock was the party that initiated the contact." *Id*. The court further noted that personal jurisdiction was weakened by the fact that plaintiff performed services in Ohio rather than Indiana, as the dispute arose over the sale of equipment located in Ohio. *Id*. at 827-828.

In *Prolific, LLC v. Freedom Central Holdings, Inc.*, the court analyzed personal jurisdiction where the South Carolina defendant had no offices, employees, bank accounts, or real estate in Indiana, the defendant had never sold any goods or services in Indiana, and no employees entered Indiana for business purposes. 2022 U.S. Dist. LEXIS 125494, *1 (S.D. Ind. July 14, 2022). In that case, a South Carolina-based defendant had contacted the South Carolina subsidiary of an Indiana company. *Id.* at 2. The subsidiary then referred the defendant to its parent with which the defendant soon after entered into an agreement. *Id.* The Court found that personal jurisdiction was lacking because "all the important aspects of the parties' relationship occurred in South Carolina, [and] text messages and phone calls to Indiana cannot overcome their significance to establish purposeful availment." *Id.*

Here, the contacts between SS Distro and Indiana are insufficient for this Court to exercise personal jurisdiction. First, the record indicates nine contacts in the form of purchase orders made from April 2022 through November 2022. The next contacts occurred when SS Distro demanded the right to return the products in January 2023. However, the record is unclear on how frequent such contacts concerning the return of the products were. The final contact occurred when SS Distro shipped unsold products back to 3C in Indiana. SS Distro neither conducts, nor has any of its employees enter Indiana to conduct, any business in Indiana. SS Distro's contacts with Indiana

10

consist solely of interstate mailings and telecommunications. Such contacts between SS Distro and Indiana fall well short of the one hundred contacts in *Spokane Kart Racing* and the "continuous course of direct communications" in *Burger King*. Further, like in *Hotmix* and *Prolific*, communications occurred remotely via telephone, online, or through 3C's representative in Dallas.

Unlike in *Burger King*, 3C was the initiating party. SS Distro affirms that a 3C sales representative who lives in the Dallas, Texas area, contacted SS Distro and was the party who placed the purchase orders in person in Texas for SS Distro ([Filing No. 18-1 at 3](Filing No. 18-1 at 3)). 3C has not provided any evidence contesting such factual allegations. Though the Court is obligated to resolve disputes in favor of the non-moving party, the Court need not do so here, as the evidence is undisputed that the purchases were made through 3C's sales representative in Dallas rather than through SS Distro reaching out directly to 3C in Indiana.

The contacts between the parties were also sporadic. While the first and last contacts are separated by just over a year, the bulk of the contacts between the parties occurred during a two-month span from October 2022 to November 2022. Seven of the nine purchase orders were made during these two months with the other two purchase orders occurring once in April 2022 and once in July 2022. The only other contacts occurred in January 2023, when SS Distro tried to return the products, and finally in June 2023, when SS Distro shipped the products back to 3C. The purchase orders did not provide for continuous obligations in Indiana; rather, obligations only arose when each specific purchase order was placed. These circumstances fall short of the continuous obligations in Indiana that were shown by the automatic contract renewals in *Spokane Kart Racing* or the twenty-year contract in *Burger King*. Because such contacts were sporadic and did not require continuing obligations in Indiana, SS Distro could not have reasonably expected to be haled into court in Indiana.

3C argues that SS Distro had substantial contacts with Indiana given that it established a continued relationship with 3C by purchasing hundreds of thousands of dollars of 3C's products, and by reaching out to 3C in hopes of returning the products (Filing No. 19 at 9). First, while there may be some monetary value which causes a defendant's contacts to "cross the threshold from offending due process to sufficient minimum contacts," *Citadel*, 536 F.3d at 763, 3C cites no case to show the purchases here cross that threshold. Second, a buyer contacting the seller to return a product does not constitute "reaching out" for the purpose of establishing sustained contact with a forum. As discussed above, 3C's sales representative traveled to Texas to place the purchase orders for SS Distro, not the other way around. Moreover, the purchase orders were made for the "discrete task" of purchasing a set amount of 3C's products. *See id.* 3C has not shown that the purchase orders created a continuing obligation on behalf of SS Distro in Indiana. *See Travelers*, 339 U.S. at 647.

3C next cites this court's decision in *Estimating Grp. LLC v. Rickey Condradt, Inc.*, 2020 U.S. Dist LEXIS 202222 (S.D. Ind. Feb. 18, 2020) to argue that the combination of the purchase amount, SS Distro's agreement to join the Wholesaler Program and be governed by Indiana law, the discussions about returning the product, and SS Distro's shipping of the products back to 3C demonstrated "a continued relationship" rather than a "one-off . . . transaction." *Id*. at *8 (Filing No. 19 at 9). However, in *Rickey Condradt*, the communications spanned five years, with services in 2018 alone averaging between 110-124 hours per week for ten months. *Id*. By contrast, the communications in this case occurred sporadically over one year, and as the Court stated above, the bulk of the communications occurred during a two-month span. Such communications do not amount to a demonstration of a continued relationship to warrant jurisdiction.

3C finally argues that jurisdiction is proper because SS Distro "expressly aimed" its tortious conduct at Indiana, where they knew 3C was located and would suffer "the brunt of th[e] injury." *Calder v. Jones*, 465 U.S. 783, at 789-90 (1984) ([Filing No. 19 at 9](Filing No. 19 at 9)). 3C further argues that jurisdiction is proper pursuant to *Tamburo v. Dworkin*, because SS Distro knew that 3C would experience commercial and reputational loss in Indiana, even though SS Distro's allegedly defamatory statements made to American Express were made outside of Indiana. 601 F.3d 693, 707-708 (7th Cir. 2010). However, the Seventh Circuit in *Tamburo* held that "[t]ortious acts aimed at a target in the forum state" satisfy *Calder's* "express-aiming requirement" when they are "undertaken for the *express purpose* of causing injury there." 601 F.3d at 707 (emphasis added). In that case, the court found that by publishing false and defamatory statements about the plaintiff on public websites and blast emails, the defendants "purposely targeted [the plaintiff] and his business in Illinois with the express goal of inflicting commercial and reputational harm on him there." *Id.* Here, while SS Distro likely knew that 3C would feel the effects of the chargebacks in Indiana, it cannot be said, based on the record currently before the Court, that SS Distro's statements to American Express resulting in the chargebacks were made with the express purpose of harming 3C in Indiana. Rather, SS Distro initiated the chargeback process to get its money back. Indeed, if the Court were to agree with 3C, then every buyer in a commercial dispute where the buyer cancels or refuses to pay for goods would be subject to personal jurisdiction in the seller's state so long as the seller claims such cancellation or refusal was tortious. This cannot be what the Supreme Court intended in promulgating the express-aiming requirement in *Calder*. Thus, the Court concludes that it has no personal jurisdiction over SS Distro. As such, the Court need not address the venue issue. *See Comitz v. Rife*, 597 F.Supp.3d 1235, 1243 (N.D. Ill. 2022) (citing 28 U.S.C. § 1391(b)(3); *Matlin v. Spin Master Corp.*, 921 F.3d 701, 704 (7th Cir. 2019)).

**B.     Transfer**

SS Distro asks the Court to dismiss the Complaint for lack of personal jurisdiction, or in the alternative, to transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) (Filing No. 18 at 12). Having determined that the Court lacks personal jurisdiction over SS Distro (and having declined to consider whether venue is proper), the Court instead evaluates whether transfer is appropriate under 28 U.S.C. § 1631.

"[W]hen federal courts find that they lack jurisdiction, they bear an independent obligation under § 1631 to consider whether to transfer the case". *North v. Ubiquity, Inc.*, 72 F.4th 221, 228 (7th Cir. 2023). Section 1631 provides the following in relevant part:

> Whenever a civil action is filed . . . and [the] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed.

*See* 12 U.S.C. § 1631. A compelling reason for transfer exists where a claim would be time-barred if the plaintiff were forced to file his claim anew in the correct venue. *See North*, 72 F.4th at 228 (citing *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)). Conversely, where the claims are not barred and the plaintiff may refile their case, transfer is not required by the interest of justice. *See id.* (quoting *Danzinger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 133 (3d Cir. 2020)).

3C argues that because the Indiana Crime Victim's Relief Act requires an action to commence within two years after the cause of action accrues, the resolution of the presently pending motion may impede their ability to refile in a different venue (Filing No. 19 at 12). With refund talks beginning in January 2023 and the chargebacks occurring on April 13, 2023, 3C contends that the two-year statute of limitations may run by the time the Court provides a decision on SS Distro's Motion to Dismiss. *Id.*

In reply, SS Distro argues that the statute of limitations is not a basis for transfer because Indiana's "Journey's Account Statute" applies and such statute "serves to resuscitate actions that have expired under a statute of limitations. The purpose of the Journey's Account Statute is to provide for continuation when a plaintiff fails to obtain a decision on the merits for some reason other than neglect, and 'the statute of limitations expires while his suit is pending.'" (Filing No. 20 at 9 (citing *Al-Chalah v. Barger Packaging*, 820 N.E.2d 670, 674 (Ind. Ct. App. 2005)).

The Journey's Account Statute provides:

> (a) This section applies if a plaintiff commences an action and:
>> (1) the plaintiff fails in the action from any cause except negligence in the prosecution of the action;
>> (2) the action abates or is defeated by the death of a party; or
>> (3) a judgment is arrested or reversed on appeal.
>
> (b) If subsection (a) applies, a new action may be brought not later than the later of:
>> (1) three (3) years after the date of the determination under subsection (a); or
>> (2) the last date an action could have been commenced under the statute of limitations governing the original action;
>
> and be considered a continuation of the original action commenced by the plaintiff.

Ind. Code § 34-11-8-1. Here, the Journey's Account Statute dispels any worry that 3C's refiling of its claims will be time barred. The statute "enables an action dismissed for lack of personal jurisdiction in one state to be refiled in another state despite the intervening running of the statute of limitations." *Al-Chalah*, 820 N.E.2d at 672 (citing *Cox v. Am. Aggregates Corp.*, 684 N.E.2d 193, 195 (Ind. 1997)). Therefore, were the Court to dismiss this action for lack of personal jurisdiction, 3C would not be barred from refiling the action in the Northern District of Texas within three years of dismissal despite the lapse of the two-year statute of limitations.

However, 3C need not refile because the Court finds that the interests of justice favor transferring this case on other grounds. *Tolbert v. Nationstar L.L.C.*, 2024 U.S. Dist. LEXIS

15

170623, at *3 (S.D. Ill. Sep. 20, 2024) ("Transfers in the interests of justice are generally favored over dismissals of actions.") (citing *El v. Belden*, 360 F. Supp. 2d 90, 93 (D.D.C. 2004)); *Naturella USA Ltd. V. BendTec, Inc.*, 2025 U.S. Dist. LEXIS 5154, at *15-16 (N.D. Ill. January 10, 2025) ("Since the term interests of justice is vague, district courts have a good deal of discretion in deciding whether to transfer a case.") (quoting *Phillips*, 173 F.3d at 610). First, neither party disputes that the Northern District of Texas would have personal jurisdiction over SS Distro. Second, this case has been pending for nearly a year and the parties have had multiple telephonic status conferences with all discovery to be completed by July 19, 2025 (Filing No. 24 at 5). Thus, the interests of justice require the transfer of this case under § 1631 to allow for the completion of discovery and to resolve this matter in the Northern District of Texas.

## IV. CONCLUSION

For the reasons stated above, the Court concludes that it lacks personal jurisdiction over Defendant SS Distro. As a result, the Court **TRANSFERS** this case to the Northern District of Texas pursuant to 28 U.S.C § 1631, and **DENIES as moot** SS Distro's Motion to Dismiss (Filing No. 17). **The Clerk is directed** to transfer this matter to the United States District Court for the Northern District of Texas.

**SO ORDERED**.

Date: 3/31/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Nicholas M. Brady
Plews Shadley Racher Braun LLP
nbrady@psrb.com

Amanda Jane Gallagher
Barnes & Thornburg LLP
Amanda.Gallagher@btlaw.com

Michael D. Moon, Jr.
BARNES & THORNBURG, LLP (Indianapolis)
mmoon@btlaw.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN LLP
gplews@psrb.com

Kevin Morris Toner
Plews Shadley Racher & Braun LLP
ktoner@psrb.com